[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 09-13635
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 3, 2010
JOHN LEY
CLERK

Agency No. A094-882-731

ANTONIO FRANCISCO CORRALES,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(June 3, 2010)

Before CARNES, PRYOR and ANDERSON, Circuit Judges.

PER CURIAM:

Antonio Francisco Corrales, a native and citizen of Venezuela, petitions for review of the decision of the Board of Immigration Appeals that denied his application for asylum and withholding of removal under the Immigration and Nationality Act and the United Nations Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment. 8 U.S.C. §§ 1158, 1231; 8 C.F.R. § 208.16(c). Corrales argues that the Board failed to consider all the evidence he introduced about his past persecution. We deny Corrales's petition in part, but we grant Corrales's petition in part, vacate in part the decision of the Board, and remand for further proceedings.

Corrales presents three arguments in his petition, and we lack jurisdiction to consider one of those arguments. Corrales challenges the findings of the immigration judge that Corrales was not credible, but "[w]e review only the Board's decision," Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001). The Board assumed that Corrales was credible.

Corrales argues that he fears future persecution when he returns to Venezuela, but substantial evidence supports the finding of the Board that Corrales's alleged fear is not well-founded. Corrales testified that he was threatened by supporters of Hugo Chavez once in October 2002 and four times in December 2002, but he returned to Venezuela after traveling to the United States in December 2003 and June 2004. Corrales also testified that in August 2004 he

learned that he had been blacklisted by the Venezuelan government, yet Corrales returned to Venezuela after a trip to the United States in December 2004. Corrales testified about a meeting in October 2005 at which he signed a document in "fear[] for [his] life," but on cross-examination Corrales conceded that he remained in Venezuela without incident until he left the country two months later. Although Corrales alleged in his application that on December 8, 2005, he decided to flee Venezuela to save his life, Corrales later testified that he visited the United States in December 2005 to spend Christmas with his family and then he decided to stay. Corrales acknowledged that his wife, who also is blacklisted, resides in Venezuela unharmed, and his daughter has traveled periodically to Venezuela without incident. See Ruiz v. U.S. Att'y Gen., 440 F.3d 1247, 1259 (11th Cir. 2006).

Corrales argues that he suffered threats and harassment so severe as to constitute past persecution, but again substantial evidence supports a contrary finding by the Board. According to Corrales, he was threatened on three occasions by a public official and members of the Bolivarian Circles and was twice threatened by an anonymous caller because he opposed the regime of Hugo Chavez, but these incidents constituted harassment, not persecution. See Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1231 (11th Cir. 2005). Corrales alleged that his intimidators once displayed weapons and on another occasion pelted him with rocks and sticks, but Corrales was never physically harmed during

3

those incidents of harassment. See Silva v. U.S. Att'y Gen., 448 F.3d 1229, 1238 (11th Cir. 2006). Corrales also complained about his detention for more than eight hours at a meeting in October 2005 presumably convened to resolve problems with residents in a community that his company had constructed. That meeting was attended by government officials and a group of Chavistas who verbally threatened him and Corrales was required to sign a form agreeing to repair construction defects. The threats that Corrales allegedly suffered during this incident too were not sufficiently severe to constitute persecution. See Djonda v. U.S. Att'y Gen., 514 F.3d 1168, 1174 (11th Cir. 2008); Zheng v. U.S. Att'y Gen., 451 F.3d 1287, 1289–92 (11th Cir. 2006).

Corrales also argues that he suffered past persecution based on economic harm inflicted by the Venezuelan government, but the Board failed to make a finding about Corrales's alleged economic injuries. The Board has "stated that persecution 'could consist of economic deprivation or restrictions so severe that they constitute a threat to an individual's life or freedom.'" In re T-Z, 24 I. & N. Dec. 163, 170 (BIA 2007) (quoting Matter of Acosta, 19 I. & N. Dec. 211, 222 (BIA 1985)). Corrales presented evidence that he suffered economic harm: Corrales introduced evidence that he was placed on the Tascon list, which he alleged was used to deny citizens credit, access to public buildings, government jobs, and payment for contracts, and Corrales testified that, as a result of being

4

placed on the Tascon list, the government rescinded and stopped payment on its contracts with Corrales. We remand for the Board to consider whether Corrales proved that he suffered economic deprivations so severe as to constitute persecution.

We **DENY** Corrales's petition about his alleged fear of future persecution and his alleged past persecution involving incidents of threats and harassment, but we **GRANT** Corrales's petition about his alleged past economic persecution, **VACATE** the decision of the Board to deny Corrales's petition on that ground, and **REMAND** for further proceedings.

**PETITION DENIED in part**, **GRANTED in part**, **VACATED in part**, and **REMANDED**.

5